

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00347-CV

## IN THE INTEREST OF A.A.G. AND C.L.G.G., CHILDREN

**From the County Court at Law No. 1
Brazos County, Texas
Trial Court No. 04-000585-CV-CCL 1**

## OPINION

The sole issue presented in this appeal is whether monies received as part of a structured settlement annuity are considered in the calculation of "net resources" for purposes of calculating child support under Texas Family Code Chapter 154. TEX. FAM. CODE ANN. CH. 154 (Vernon 2008). The trial court excluded monies received monthly from an annuity created from the proceeds of a personal injury settlement by creating a distinction between an annuity and a settlement annuity for purposes of determining net resources under Texas Family Code Section 154.062. TEX. FAM. CODE ANN. § 154.062 (Vernon 2008). We reverse and remand the trial court's judgment.

*Standard of Review*

We generally review a trial court's determination of child support under an abuse of discretion standard. *Wilemon v. Wilemon*, 930 S.W.2d 290, 293 (Tex. App.—

Waco 1996, no writ); *see also Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner, or when it acts without reference to any guiding principles. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin 1997, no pet.). If there is some evidence of a substantive and probative character to support the decision of the trial court, no abuse of discretion occurs. *Wilemon*, 930 S.W.2d at 294.

However, this case involves a determination of statutory construction, which we decide without giving weight to the trial court's determination, generally referred to as a de novo review. *City of Rockwall v. Hughes,* 246 S.W.3d 621 (Tex. 2008). In construing statutes, we ascertain and give effect to the Legislature's intent as expressed by the language of the statute. *See State v. Shumake,* 199 S.W.3d 279, 284 (Tex. 2006). We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired. Tex. Gov't Code Ann. § 311.011(b) (Vernon 2005).

*Statutory Construction*

It is a well-settled rule of statutory construction that every word of a statute must be presumed to have been used for a purpose, and those excluded must be presumed to have been likewise excluded. *See Quick v. City of Austin*, 7 S.W.3d 109, 123 (Tex. 1998); *Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995). Further, when provisions of the same statute may be in conflict, courts should harmonize them to give effect to both by assigning each a meaning that will permit each to stand. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). A court should not assign a

meaning to a statutory provision that would be inconsistent with other provisions of the same act, even though it might be susceptible to such a construction standing alone. *See Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002); *Clint ISD v. Cash Invs., Inc.*, 970 S.W.2d 535, 539 (Tex. 1998). Further, when a general statutory provision conflicts with a more specific provision, "the provisions shall be construed, if possible, so that effect is given to both." TEX. GOV'T CODE ANN. § 311.026(a) (Vernon 2005). If the conflict between a general provision and a more specific provision is irreconcilable, "the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail." TEX. GOV'T CODE ANN. § 311.026(b) (Vernon 2005).

*The Statutes*

The conflict here arises in the determination of whether an annuity purchased for purposes of paying out a personal injury settlement is to be included as a resource under Texas Family Code Sections 154.062(b)(5) and (c). TEX. FAM. CODE ANN. § 154.062(b)(5) & (c) (Vernon 2008). Section 154.062(b)(5) includes in the definition of "resources:"

> all other *income* actually being received, *including* severance pay, retirement benefits, pensions, trust income, *annuities*, capital gains, social security benefits, unemployment benefits, disability and workers' compensation benefits, interest income from notes regardless of the source, gifts and prizes, spousal maintenance, and alimony.

TEX. FAM. CODE ANN. § 154.062(d)(5) (emphasis added). However, section (c) defines what are not included as resources:

(1) *return of principal* or capital; (2) accounts receivable; or (3) benefits paid in accordance with aid for families with dependent children.

TEX. FAM. CODE ANN. § 154.062(c) (emphasis added).

The term "annuity" is defined as: 1. An obligation to pay a stated sum, usually monthly or annually, to a stated recipient; 2. A fixed sum of money payable periodically; 3. A right, often acquired under a life insurance contract, to receive fixed payments periodically for a specified duration; … 5. A savings account with an insurance company or investment company, usually established for retirement income." BLACK'S LAW DICTIONARY 99 (8th ed. 2004). As there are multiple definitions of an annuity, there are also many types of annuities for different purposes.

Principal is defined in relevant part as "the amount of a debt, investment or other fund, not including interest, earnings, or profits." BLACK'S LAW DICTIONARY 1231 (8th ed. 2004). In this case, an annuity was purchased as a means to pay out a settlement from a lawsuit over a span of years. The issue is whether the amounts received by Guedea, the father, constitute a return of principal, which is not a resource, or whether it constitutes income that would be included as a resource.

The Attorney General, on behalf of the State of Texas, contends that the term "annuity" as it is used in Section 154.062(b) would include the entire amount of every payment under the annuity agreement. Guedea contends that no portion of the payments under the annuity agreement should be included.

We believe the answer is somewhere in between these contentions which we are unable to determine based on the record before us. The evidence the trial court needed

to decide the issue is what portion of the payments being received represent a return of principal and what portion represents the interest being earned for the use or forbearance of the entire amount of the settlement proceeds.[1]

All annuities have three critical components. For the payment of a sum of money by one person or entity, the recipient of the payment will pay money to another person the amounts on the dates agreed to in the annuity contract. Thus, the three critical elements are (1) the receipt of money, (2) the passage of time, and (3) the payment or return of money. Inherent in this process is the inclusion of interest for the acceptance of the payout of the settlement over time.

*Deviation from the Guidelines*

The legislature demonstrated its intent to allow the trial court to deviate from a purely mathematical formula for calculating child support by enacting Section 154.123. TEX. FAM. CODE ANN. § 154.123(3) (Vernon 2008). This provision allows the Court to consider, among other things, "any financial resources available for the support of the child" in deviating from the child support guidelines. In this case, the trial court specifically did not utilize this provision. There is no question that the trial court's computation of child support was based on the complete exclusion of all of the monthly annuity payments. This was erroneous. We sustain the Attorney General's sole issue.

---

[1] We do not reach the question of whether any portion of the annuity payment actually represents a return of principal because the record is not clear about the financial arrangements regarding the settlement and resulting purchase of the annuity. The focus of the hearing was on the entire annuity amount rather than the details about its original purchase.

*Conclusion*

Having found that the exclusion of the entire annuity on these facts was erroneous, we reverse and remand to the trial court for further proceedings in accordance with this opinion.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Reverse and Remand
Opinion delivered and filed July 1, 2009
[CV06]