In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00461-CV

_____

MARCUS ANDREW CARTER, Appellant

V.

KRISTIN RUTH CARTER, Appellee

**On Appeal from the 410th District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-08-09147**

## MEMORANDUM OPINION

Marcus Andrew Carter appeals from a final judgment of divorce. In four issues, Marcus complains about the trial court's order of property division and child support. We affirm in part, reverse in part, and remand the case for further proceedings.

### I. Background

Marcus and Kristin Ruth Carter married in February 1998. The couple had one child, born February 7, 2000. The couple separated in August of 2010. Kristin

1

initially filed for divorce in Florida. In December of 2011, Kristin and the child moved to Texas. After living in Texas for more than six months, Kristin filed for divorce in Texas on August 28, 2012. Kristin dismissed her case in Florida on October 29, 2012. Marcus filed a petition in Florida seeking divorce from Kristin on December 1, 2012. On February 14, 2013, the trial court in Texas determined it had jurisdiction over the case.[1]

Following a bench trial, the trial court granted the divorce. The final decree of divorce appointed Marcus and Kristin joint managing conservators over their child, and gave Kristin exclusive right to designate the child's primary residence. The trial court ordered Marcus to pay monthly child support in the amount of $2,000. The trial court further ordered Marcus to pay one-half of the costs associated with the child attending private school for grades one through twelve. The trial court ordered Marcus to maintain health insurance on the child and to pay half of any unreimbursed health-care expenses.

## II. Marital Estate Division

Because the division of the marital estate can materially influence the award of child support, we first consider Marcus's fourth issue wherein he argues that the trial court failed to divide the marital estate in a just and right manner when it

---

[1]The parties do not contest jurisdiction on appeal.

failed to consider evidence of the nature and value of the community property. *See Vazquez v. Vazquez*, 292 S.W.3d 80, 86 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (remanding child support determination after holding there was insufficient evidence to support division of marital estate because property division may materially influence child support determination). Marcus specifically complains about the trial court's refusal to consider his "Family Law Financial Affidavit" and the court's acceptance of Kristin's inventory and appraisement as conclusive evidence of value. He contends that in failing to consider his affidavit, the trial court's division of property was not just and right.

The Family Code provides that a trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code Ann. § 7.001 (West 2006). Trial courts may exercise wide discretion in ordering property division. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998). Absent an abuse of discretion, the trial court's division of a marital estate will not be disturbed on appeal. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). A trial court abuses its discretion when it acts arbitrarily or unreasonably, and without reference to any guiding rules or principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

3

On November 1, 2012, the trial court issued a discovery control order in the divorce action. The discovery control order required each party to file a sworn inventory and appraisement and a financial information statement on or before forty-five days before trial. The discovery control order also provided that failure to file these documents "will result in the Court adopting as stipulated the information filed by the complying party."

At the beginning of the final hearing, proceeding pro se, Marcus informed the court that he had not filed an inventory and appraisement but asked the court to accept his "court financial affidavit." At the hearing, Marcus did not describe the affidavit he referenced or otherwise identify its contents on the record. The trial court denied Marcus's request. The trial court ruled that because Marcus had not filed the appropriate documents as specified in the local rules, it would accept Kristin's inventory and appraisement and consider her inventory and appraisement established and proven.

In his appellate brief, Marcus argues that because he was proceeding pro se, he had mistakenly informed the trial court that he had not filed an inventory and appraisement. He contends that while he used the incorrect terminology, the "financial affidavit" that he asked the court to accept contained the same information as the inventory and appraisement requested by the court. On appeal,

4

Marcus contends the reference was to his "Family Law Financial Affidavit[.]" Marcus essentially argues that the trial court erred when it imposed a sanction on him as he had complied with the local rules and the discovery control order. He contends on appeal that the trial court should have considered his "Family Law Financial Affidavit" in making value determinations because it was essentially the equivalent of the documents required under the local rules.

A district court is permitted to make local rules. See Tex. R. Civ. P. 3a. Montgomery County has enacted local rules to manage the court dockets. On its face, local rule 4.5 is a discovery rule used to aid the court in meeting the requirements of the Texas Family Code. Montgomery County Local Rule 4.5A provides that the parties in domestic relations cases related to divorce are to file inventories and financial information statements. Montgomery Cnty. Dist. Cts. (Tex.) Loc. R. 4.5A. Rule 4.5C requires parties to exchange their final inventories, their Financial Information Statements, and proposed division of property no later than thirty days before trial or as required by the docket control order. *Id*. at 4.5C. The rule further requires that the parties file these documents with the court before the commencement of the trial. *Id*. at 4.5C. Rule 4.5D provides that if a party fails to file the statement or inventories, the court will adopt as stipulated the information filed by the complying party. *Id*. at 4.5D. It further provides that "[t]he

5

non-complying party will be prohibited from contesting the accuracy of the information presented by the complying party." *Id*. at 4.5D.

There is no evidence in the record that Marcus filed the required documentation prior to the commencement of the final hearing. Kristin, however, did comply with the local rules and the trial court's order and filed the required documents. Because Marcus did not file the required documents, he is prohibited from contesting the accuracy of the values represented in Kristin's documents pursuant to the docket control order and the local rules. Accordingly, the trial court did not abuse its discretion when it entered a property division relying upon the valuations contained in Kristin's documents. We overrule Marcus's fourth issue.

### III. Child Support Obligation

In his first, second, and third issues, Marcus argues the trial court abused its discretion in determining his monthly net resources and ordering him to pay $2,000 a month in child support because (1) the evidence is legally and factually insufficient to support the trial court's finding that his net resources were in excess of $7,500 a month, (2) the trial court failed to follow the statutory guidelines in assessing child support, and (3) there is no evidence that the child's needs justified an award in excess of the statutory guidelines. We review a trial court's determination of child support for an abuse of discretion. *Worford*, 801 S.W.2d at

109. The trial court abuses its discretion if the court acts without reference to any guiding rules or principles. *Id*. If some probative evidence supports the trial court's decision, then no abuse of discretion occurred. *In re A.A.G.*, 303 S.W.3d 739, 740 (Tex. App.—Waco 2009, no pet.).

**A. Marcus's Net Resources**

In his first issue, Marcus contends the evidence is legally and factually insufficient to support the trial court's finding as to his net resources. Insufficiency of the evidence does not constitute an independent ground for reversal; rather, a claim that the evidence is legally or factually insufficient is merely a factor in assessing whether the trial court abused its discretion. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet); *see Granger v. Granger*, 236 S.W.3d 852, 856 (Tex. App.—Tyler 2007, pet. denied). Therefore, in determining whether a trial court abused its discretion, we consider whether the trial court had sufficient evidence on which to exercise its discretion and whether the trial court erred in its exercise of that discretion. *A.B.P.*, 291 S.W.3d at 95. The trial court does not abuse its discretion when there is some evidence of a substantive and probative character to support the decision. *Baltzer v. Medina*, 240 S.W.3d 469, 475 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

The Family Code provides separate analyses for setting child support, depending on whether an obligor has monthly net resources below or above $7,500.[2] *See* Tex. Fam. Code Ann. §§ 154.125, 154.126 (West 2014). If an obligor's monthly net resources are not greater than $7,500, the court must apply a presumptive award based on a percentage of the obligor's monthly net resources and the number of children at issue. *Id*. § 154.125. When an obligor's monthly net resources exceed $7,500, the trial court must apply the percentage guidelines to the first $7,500 of the obligor's monthly net resources. *Id*. § 154.126(a).

Net resources for a child-support obligation include "100 percent of all wage and salary income and other compensation for personal services (including commissions, overtime pay, tips, and bonuses)[,]" "self-employment income[,]" and "net rental income[.]" *Id*. § 154.062(b)(1), (3), (4). "In its discretion, the court may exclude from self-employment income amounts allowable under federal income tax law as depreciation, tax credits, or any other business expenses shown

[2]To reflect inflation, the $7,500 cap automatically adjusts every six years based on the consumer price index. Tex. Fam. Code Ann. § 154.125(a-1). Effective September 1, 2013, the cap was increased to $8,550. 38 Tex. Reg. 4647 (2013). This case was filed August 28, 2012 and the final hearing took place April 23, 2013. As such, the increased cap was not applicable. *See* Tex. Fam. Code Ann. § 154.122(a) ("The amount of a periodic child support payment established by the child support guidelines in effect in this state at the time of the hearing is presumed to be reasonable, and an order of support conforming to the guidelines is presumed to be in the best interest of the child."); § 154.125(a-2) ("The initial adjustment required by Subsection (a-1) shall take effect September 1, 2013.").

by the evidence to be inappropriate in making the determination of income available for the purpose of calculating child support." *Id.* § 154.065(b).

The trial court determined that Marcus had net resources that exceeded $7,500 a month. During the final hearing, the trial court admitted, without objection, a financial affidavit that Marcus completed in the Florida divorce proceedings. In the affidavit, Marcus stated that in 2011, he had an annual gross income of $95,742, which is approximately $7,900 gross income a month. In the affidavit, Marcus stated that in 2012, he received $3,077 every other week from his employer. According to the affidavit, in 2012, Marcus grossed $6,666 in salary or wages and grossed $270 in rental income.

Kristin testified that she believes Marcus receives $12,247.82 in spendable income each month. Kristin testified that Marcus told her that in addition to his monthly salary, he receives $2,083 a month in consulting fees from ongoing consulting work. Kristin also testified that Marcus has four rental properties, and, at one point, each property earned between $800 and $850 per month. According to Kristin, Marcus has made statements to her indicating that he has allowed the rental properties to fall into disrepair, and he claims he does not currently have tenants for the properties. If this is true, Kristin believes Marcus has allowed this to happen intentionally to decrease any equity in the property in anticipation of their

divorce. Kristin testified that Marcus should be receiving at least $3,200 a month in rental income minus every day expenses associated with the properties. Kristin testified that Marcus's claim that he only receives $270 a month in rental income is a "fictitious number." When determining the net resources available for child support, the court may assign a reasonable amount of deemed income attributable to income-producing assets in which earnings have intentionally been reduced. Tex. Fam. Code Ann. § 154.067(b) (West 2014).

Marcus cross-examined Kristin regarding her testimony. Marcus, however, did not testify and did not offer evidence of his current income or net resources. As the sole factfinder, the trial court weighed the testimony and evidence and could have found Kristin's testimony credible and discredited any conflicting evidence. *Murff*, 615 S.W.2d at 700 ("The trial court in a divorce case has the opportunity to observe the parties on the witness stand, determine their credibility, evaluate their needs and potentials, both social and economic."). Because there is some evidence to support the trial court's finding that Marcus had net resources in excess of $7,500 a month, we conclude the trial court did not abuse its discretion in applying the percentage guidelines to the first $7,500 of Marcus's net resources.

**B. Award of an Amount Greater than the Presumptive Award**

The "child support guidelines" set forth in the Texas Family Code "are intended to guide the court in determining an equitable amount of child support." Tex. Fam. Code Ann. § 154.121. The amount of child support established by applying the guidelines is presumed to be reasonable, and an order of support that conforms to the guidelines is presumed to be in the child's best interest. *Id.* § 154.122(a).

In his second and third issues, Marcus challenges the trial court's award of an amount over and above the presumptive award. In its judgment, the trial court included the following statement on the guidelines:

> In accordance with Texas Family Code section 154.130, the Court makes the following findings and conclusions regarding the child support order made in open court in this case on April 23, 2013:
>
> 1. The amount of child support ordered by the Court is in accordance with the percentage guidelines.
>
> 2. The net resources of Marcus Andrew Carter per month are $12,247.33.
>
> 3. The net resources of Kristin Ruth Carter per month are $3,336.00.
>
> 4. The percentage applied to the first $7,500.00 of Marcus Andrew Carter's net resources for child support is 20 percent.

11

Twenty percent of the first $7,500 of Marcus's net resources amounts to a presumptive award of $1,500 a month. Thus, Marcus's monthly child support obligation of $2,000 exceeds the presumptive support obligation for one child by $500 per month, even before the trial court ordered him to pay one-half of the private school tuition. *See id*. § 154.125(b).

Section 154.126 of the Family Code gives the trial court discretion to order additional amounts over and above this presumptive award. *Id*. 154.126(a). "Without further reference to the percentage recommended by these guidelines, the court may order additional amounts of child support as appropriate, depending on the income of the parties and the proven needs of the child." *Id*. If the court determines it is appropriate to award more than the presumptive amount, the court calculates the extra amount by subtracting the presumptive award from the proven total needs of the child. *Id*. §154.126(b). After the presumptive award is subtracted, the court is to then allocate between both parties the amount needed to meet the additional needs of the child based on the circumstances of the parties. *Id*. The Family Code provides that "in no event may the obligor be required to pay more child support than the greater of the presumptive amount or the amount equal to 100 percent of the proven needs of the child." *Id*.

In his third issue, Marcus argues specifically that the evidence does not support that the child's needs justify an award of support beyond the guideline amount. Marcus contends there is no evidence in the record that the proven needs of the child justified awarding a sum in excess of the presumptive amount. Section 154.126 does not define what constitutes the "proven needs of the child." *See id.* § 154.126; *see also Nordstrom v. Nordstrom*, 965 S.W.2d 575, 579 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). The Texas Supreme Court has interpreted an earlier version of this provision of the Family Code to provide that the "needs of the child" include more than the "bare necessities of life" and courts must follow the paramount guiding principle of "the best interest of the child" in determining the award. *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 417 n.3, 418 (Tex. 1993).

Because the trial court awarded an amount of child support that was greater than the presumptive amount of $1,500, the trial court was required to find that the proven needs of the child exceeded the presumptive amount. *See* Tex. Fam. Code Ann. § 154.126(b). The only monetary figure established during the final hearing for the expenses of the child regarded the child's monthly tuition for attending private school. At the time of the final hearing, the monthly tuition for the child's school appeared to be $850 per month. The trial court ordered Marcus to pay one-half of the tuition payments either as additional child support or in addition to child

support. The record in this case contains no evidence that private school is a "proven need" of the child. Even assuming private school is a proven need, the trial court ordered Marcus to pay one-half of such amount in addition to the ordered child support. There is no other evidence in the record to show the needs of the child or the expenses related to those needs. The trial court ordered Marcus to pay $2,000 in child support and ordered him to pay one-half of the child's private school tuition. Applying section 154.126(b)'s formula, this amount is more than one hundred percent of the proven needs of the child. *See id.* § 154.126(b). The trial court abused its discretion when it ordered Marcus to pay more than one hundred percent of the proven needs of the child; therefore, we sustain Marcus's third issue. Because we have concluded that the total proven needs of the child do not exceed the presumptive amount of child support based on the first $7,500 of Marcus's net resources, we need not decide Marcus's second issue as it would provide no greater relief. *See* Tex. R. App. P. 47.1.

We reverse the trial court's judgment only insofar as it orders Marcus to pay the amount of $2,000 as child support, plus an additional amount equal to one-half of the child's private school tuition.[3] We remand the cause to the trial court for it to

---

[3]We note that a child support order should specify the exact amount the obligor is required to pay. *See In re Grossnickle*, 115 S.W.3d 238, 249 (Tex. App.—Texarkana 2003, no pet.) (order requiring father to pay one-half of

14

determine the proper amount of child support to be paid by Marcus. In all other respects, we affirm the judgment of the trial court.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

_____
CHARLES KREGER
Justice

Submitted on September 10, 2014
Opinion Delivered July 30, 2015

Before McKeithen, C.J., Kreger and Horton, JJ.

---

unspecified costs of child's attendance at private school was too vague to be enforceable).